expenses claimed for those voyages that correspond to Owner's Exhibits D-56, D-74, D-85, D-90, D-96, D-98, D-119 and D-129, less the fuel consumption component.

### Bunker Escalation/Surcharges

As the COA primarily contemplated consecutive voyages, TBS contends that the bunker escalation surcharge is to be applied on a round trip basis for each laden and ballast voyage performed. UA has raised several questions regarding excessive consumption of individual vessels and the cost prices used by TBS, but its chief arguments are twofold. Firstly, the initial version of the COA[7] did not include a bunker escalation surcharge, whereas the subsequent versions[8] did. UA contends the clause was slipped into the COA without its knowledge or consent. But as previously stated, the panel finds that UA had ample opportunity to examine the COA and object to any provisions to which it did not agree or considered inappropriate. Rather than object, UA jointly signed the COA with TBS and is bound by its terms. Secondly, UA argues that the bunker escalation surcharges should not apply to the round voyage but only to the laden voyage between Fujairah to Mesaieed. Its argument is based in part on the COA Clause 44 which restricts the bunker escalation surcharge to "the quantity consumed on the contracted voyage(s)" and also upon the underlying supply contract between Qatar Quarries & Building Materials Co. and United Quarries which states, "Voyage starts from the time the vessel tenders the notice of readiness at Fujairah Port (NOR) and ends at the time the vessel completes discharge at Measieed Port." Of the two arguments presented, we find the first to be the more persuasive.

Although the COA does contemplate the use of consecutive voyages, the Bunker Escalation Surcharge Clause restricts its application to only the "contracted voyage(s)". In the absence language that the surcharge is to be applied on a round trip basis

---

[7] Exhibit R2
[8] Exhibits R3 and the jointly signed Exhibit R4

Fujairah to Fujairah, we interpret the "contracted voyage(s)" to be that or those for which freight is paid. TBS authored the COA and if, as it now contends, the bunker escalation was intended to apply to a round voyage, it ought to have chosen the language used more carefully. Not having done so, we find that the bunker escalation applies only to each single laden voyage from Fujairah to Mesaieed.

We have carefully considered the expert report presented by UQ and, in particular, the methodology and documents used by Capt. Sundar of Constellation Marine Services, LLC to determine the bunker escalation costs. In his report, UA's expert evaluated the statements of facts for each laden voyage, the bunker invoices issued by Manjasa and Bominfloat and the TBS's bunker escalation work sheets. After reviewing the available documentation, we accept the single laden voyage conclusions and calculations of UQ's expert that show a balance due TBS of $864,362.07 and we, hereby, award that amount to TBS.

**Address Commission**

UQ contends that Mr. Gandhi agreed to an address commission of 1.25% payable on both the gross freight and demurrage earned by TBS. However, there is no mention of an address commission in the jointly signed COA nor in any of its prior versions. That said, we have seen correspondence between UQ and both Mr. Gandhi and TBS that does mention an address commission. However, neither that correspondence nor any other evidence before us specifies the amount of the address commission nor the items to which it is to be applied.

According to TBS, UQ was entitled to an address commission of 0.65% payable only on freight earned. In support of its position, TBS produced COA Addendum 3, which in pertinent read:

" ... in accordance with Clause 24 of the subject COA, an address commission of 0.65 percent on freight only (not to be earned on demurrage) is due to the Charterers..."

But Addendum 3 raises a number of troubling questions, beginning with the fact that it is unsigned by either party and dated February 17, 2006, or more than two months before the April 26, 2006 date of the COA itself. Moreover, although premised upon "Clause 24 of the subject COA", that particular clause deals only with laytime and NOR issues, not address commissions due UQ. Finally, TBS's calculation of $163,396.34 does not agree with the plain language of Addendum 3 upon which it relies.

We readily acknowledge that an address commission of 0.65% payable only on freight is unusual. A more customary commission would be 1.25% payable on both freight and demurrage. Although that tends to support UQ's contentions, we note that parties are to free to negotiate contract terms that depart from what might be described as the usual and customary arrangements. Here again, UQ had the opportunity to examine the COA and either require the address commission to be inserted into the COA or call for a side letter that memorialized that commission. UQ's failure to do either leaves us with no corroborating evidence of its position and, consequently, no choice but to reluctantly accept Owner's position that UQ is due an address commission of 0.65% credit payable only on the freight earned by TBS. We calculate that commission to be $196,764.33, which amount we hereby award to UQ.

Given the circumstances of his termination, we are not surprised that TBS chose not to present evidence from Mr. Gandhi and we draw no adverse inference for it not having done so. We also note that COA Box Clauses 1 and 24 provides that a 2.5% broker's commission is payable by TBS to its port agent National Shipping Services LLC, which, as far as we can discern from the submissions, had no role in arranging or negotiating the COA.

Finally, we find that this proceeding was unduly delayed by the several overstated demands (some of which exceeded $4 million) initially made by TBS and the intervening bankruptcy of TBS's parent company. For these reasons, we have only allowed TBS interest from March 20, 2011, which is the date TBS first submitted a credible claim to UQ.

## The Award

In view of the foregoing, the panel hereby unanimously awards TBS the sum of $ 1,121,783.12 as follows:

| | | |
|---|---|---|
| 1. Account Reconciliation Balance- | | $122,753.00 |
| 2. Reimbursement of Additional War Risk Premium | | 138,162.15 |
| 3. Shifting Expenses | | 13,115.71 |
| 4. Bunker Escalations | | 864,362.07 |
| | S/T | $1,138,392.93 |
| Less: Address Commission due UA on Freight of $30,271,436.75 X 0.65% | | (196,764.33) |
| | | $941,628.60 |
| Add: Simple interest at the annual rate of 3.25% from March 30, 2011 through to the date of this award. | | 80,154.52 |
| Add: Allowance against TBS's legal fees and costs | | 100,000.00 |
| Total Award due TBS | | $1,121,783.12 |

If payment has not been made within 30 days from the date of this award, simple interest shall resume and continue to accrue at the rate of 3.25% p.a. on the principal amount of $941,628.60 until the award has been fully paid or reduced to judgment, whichever first occurs. The arbitration clause provides that this award may be made a rule of the court.

The arbitrators' fees and expenses are set forth in the attached Appendix A, which forms and integral part of this award. Notwithstanding the equal allocation of those

fees and expenses by the majority (Messrs. Siciliano and Desmond) , they remain the joint and several obligation of both parties and are to be paid in accordance with the instructions contained in the aforesaid Appendix A.  Mr. Measter disagrees with this allocation and would have charged all of the arbitrators' fees and expenses to UQ.

_____
Charles L. Measter

_____
A. J. Siciliano

_____
Gerard T. Desmond, Chairman

New York, New York
November 11, 2013

```
*******************************************
   In the Matter of the Arbitration          *
                                             *
            between                          *
                                             *
   TBS MIDDLE EAST CARRIERS, LTD.,           *
           as Disponent Owner,               *
                                             *
              -and-                          *
                                             *
   UNITED QUARRIES, as Charterer,            *
                                             *
   Under a Gencon Form Contract of           *
   Affreightment dated April 26, 2006        *
*******************************************
```

## APPENDIX A

The panel's fees and expenses for rendering this award amount to $ 43,800.00 which, by a majority of the arbitrators (Messrs. Siciliano and Desmond) have allocated equally to both TBS and UQ. Mr. Measter disagrees with this allocation and would have charged all of the arbitrators' fees and expenses to UQ. That said, the panel's fees and expenses remain the joint and several responsibility of both parties and are to be paid from the separate $25,000 escrow accounts each of the parties has established for this purpose with the Society of Maritime Arbitrators, Inc. (SMA) as follows:

|                    | Fee         | TBS pays    | UQ pays     |
|--------------------|-------------|-------------|-------------|
| Charles L. Measter | $16,200.00  | $ 8,100.00  | $ 8,100.00  |
| A. J. Siciliano    | $13,400.00  | $ 6,700.00  | $ 6,700.00  |
| Gerard T. Desmond  | $14,200.00  | $ 7,100.00  | $ 7,100.00  |
|                    | $43,800.00  | $21,900.00  | $21,900.00  |

Upon full payment of the panel's fees, the SMA is to return the balances remaining in the escrow accounts, including accrued interest, to the respective depositors.

New York, New York
November 11, 2013