UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

IN THE MATTER OF ARBITRATION,            :

                                          :

       -between-          :

                                          :
                                                13 Civ. 8932 (ALC)
TBS MIDDLE EAST CARRIERS, LTD.,          :

                     Petitioner,           :
                                                **MEMORANDUM &**
       -against-          :   **ORDER**

                                          :

UNITED QUARRIES,                          :

                     Respondent.          :
-------------------------------------------------------------- X

ANDREW L. CARTER, JR., District Judge:

I.    Introduction

      Petitioner TBS Middle East Carriers, Ltd. owns vessels that were chartered by Respondent United Quarries to carry approximately 6,000,000 metric tons of aggregates for a period of three years from the United Arab Emirates to Qatar. After the completion of 134 shipments, the parties disputed the proper reconciliation of certain charges made to Respondent's account. Pursuant to the contract executed by the parties, arbitration proceedings were commenced in New York. After the panel of arbitrators was selected, the parties submitted documents and sworn declarations in support of their positions. On November 11, 2013, the panel issued a Final Award in favor of Petitioner for $1,121,783.12. Petitioner initiated this summary proceeding to confirm the award, which Respondent opposes on the basis that the arbitrators' decision evidenced manifest disregard for the law.

1

## II.     Background

Petitioner and Respondent entered into a Contract of Affreightment ("COA") on April 26, 2006, whereby Petitioner's vessels would carry approximately 2,000,000 metric tons of crushed gabbro aggregate in bulk for a period of three years. The liftings, or shipments, were scheduled to begin in May of 2006 from Fujairah, United Arab Emirates to Mesaieed, Qatar. A total of 134 liftings were completed under the COA. United Quarries did not challenge TBS's charges for $30,271,436.75 in freight and $18,195,408.73 in demurrage. Instead, the parties dispute the following amounts claimed by Petitioner: $122,753 for account reconciliation, $25,696.78 for reimbursement of shifting expenses including bunkers at Mesaieed, $138,162.15 for additional war risk premiums, and $1,368,782.56 for bunker escalations. Respondent denied liability for these amounts and counterclaimed for an address commission of $605,835.57, or 1.25% payable on the gross freight and demurrage earned by TBS.

After selecting the arbitration panel in accordance with the terms of the COA, the parties submitted their disputes to the arbitrators solely through documents. Petitioner set forth its arguments for the above listed amounts, and with respect to an address commission, Petitioner argued it only agreed to pay 0.65% on freight. To support this position, Petitioner provided Addendum No. 3 to the COA, which was not signed by either party.

Respondent asserted, inter alia, the COA should be voided based on alleged misrepresentations made by Bipin Gandhi, who represented TBS during the COA negotiations. According to Naim Joseph Marachly, the United Quarries representative during the negotiations, Gandhi made critical misrepresentations with respect to key terms of the contract, knowing Marachly was not familiar with chartering vessels and was not fluent in the English language.

Upon considering all of the evidence, the arbitrators found Respondent did not provide sufficient justification to void the COA. Specifically, "[n]otwithstanding what may have transpired between Mr. Mara[c]hly and Mr. Gandhi, [Respondent] had ample opportunity to examine the contract's terms and consult lawyers or more experienced third parties to explain [Respondent's] prospective legal obligations before actually signing the COA." (Pet. Ex. B at 7.) Since United Quarries willingly signed the COA, the arbitrators concluded it was bound to the contract's terms. The arbitrators further found TBS was entitled to $122,753 for account reconciliation, $138,162.15 for additional war risk premiums, $13,115.71 in shifting expenses, and $864,362.07 for bunker escalations. That sum was reduced by $196,764.33, owed to Respondent for an address commission. After the addition of interest and legal costs, the Final Award rendered by the arbitrators in favor of TBS totaled $1,121,783.12.

## III. Discussion

TBS commenced this proceeding to confirm the November 11, 2013 arbitration award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), June 10, 1958, 9 U.S.C. §§ 201-08, 21 U.S.T. 2517, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. See Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 405 (2d Cir. 2009) (noting the Convention is incorporated in the FAA). United Quarries opposes confirmation, claiming the arbitrators showed manifest disregard for the law by concluding the address commission was 0.65% on freight only. Respondent maintains it was improper for the panel to rely on Addendum No. 3 to the COA since it was unsigned by the parties. Instead, Respondent claims it never agreed to Addendum No. 3. Because there can be no enforceable agreement unless the parties manifest intent to be bound, Respondent argues the

arbitrators ignored well-settled principles of contract law, and therefore, this Court should reject confirmation of the award.

### A. Standard of Review

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984). "The role of a district court in reviewing an arbitral award is 'narrowly limited,' and 'arbitration panel determinations are generally accorded great deference . . . .'" Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH, 840 F. Supp. 2d 703, 710 (S.D.N.Y. 2011) (quoting Tempo Shain v. Bertek, Inc., 120 F.3d 16, 19 (2d Cir. 1997)). Moreover, "a district court must confirm an arbitral award unless the party seeking vacatur establishes any of the limited exceptions listed in § 10(a) of the FAA or one of the grounds for refusal specified in the Convention." Id. (citing Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576 (2008)).

In addition to the grounds set forth in the FAA and the Convention, the Second Circuit recognizes "'manifest disregard of the law' as a 'valid ground' for vacatur as a 'judicial gloss' on the grounds specified by Section 10 of the FAA." NYKCool A.B. v. Pac. Fruit, Inc., 507 Fed. App'x 83, 85-86 (2d Cir. 2013) (quoting T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339-40 (2d Cir. 2010)). "A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a 'heavy burden,' as awards are vacated on grounds of manifest disregard only in 'those exceedingly rare instances where some egregious impropriety on the part of the arbitrator[ ] is apparent[.]" T.Co Metals, 592 F.3d at 339 (internal citations omitted). "'[M]ore than error or misunderstanding with respect to the law,' or an

4

'arguable difference regarding the meaning or applicability of laws'" is required to disturb the award. Id. (internal citations omitted). In fact, "[o]nly 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." D.H. Blair & Co., Inc. v. Gottdiener, 462 F .3d 95, 110 (2d Cir. 2006) (citation omitted).

### B. Manifest Disregard for the Law

The party opposing the award for manifest disregard of the law must "demonstrate that the arbitrator knew of the relevant principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 217 (2d Cir. 2002). But, Respondent has made no such showing. Although the parties submitted several disputes to the arbitrators, United Quarries argues here only that the findings regarding its counterclaim for an address commission are erroneous. According to Respondent, in enforcing an unsigned document that was dated prior to the execution of the COA, the panel intentionally ignored the "well-settled and clearly-applicable 'elemental principle of contract law that no contract can be formed unless the parties intend to be bound.'" (Resp't's Mem. 7 (citation omitted).)

The Court's reading of the Final Award, however, does not accord with Respondent's position. First, the arbitrators specifically concluded the COA was a valid, enforceable agreement between the parties, notwithstanding Respondent's request to declare it void. (Pet. Ex. B at 7-8.) Indeed, Marachly explicitly acknowledges signing the COA on April 26, 2006. (Wanchoo Decl. Ex. A ¶ 6.) The panel then turned to the provisions of the COA to inform the terms of an address commission. The arbitrators noted, "[T]here is no mention of an address commission in the jointly signed COA nor in any of its prior versions." (Pet. Ex. B at 11.) While

the arbitrators recognized there were communications between United Quarries, Gandhi, and TBS mentioning an address commission, none of those communications, nor any other evidence before the panel, stated the amount and the items to which it applied. (Id.) During the arbitration, Petitioner conceded Respondent was entitled to a 0.65% address commission on freight and produced Addendum No. 3. Respondent argued it was entitled to an address commission of 1.25% payable on the gross freight and demurrage earned by TBS based on Marachly's declaration, recounting an alleged understanding reached between him and Gandhi. (Wanchoo Decl. Ex. A ¶ 8.)

The arbitrators acknowledged certain concerns with Addendum No. 3, including that it was unsigned, dated two months prior to the COA, referenced inapplicable clauses in the COA, and represented an unusual address commission under industry standards. (Pet. Ex. B at 12.) Nonetheless, the arbitrators rejected Respondent's contention that the parties agreed to a 1.25% address commission. (Id.) The address commission was not memorialized in the COA or a side letter, and the panel found there was "no corroborating evidence" of Marachly's statements. (Id.) Thus, the arbitrators concluded there was only a basis to award an address commission of 0.65% on the gross freight earned by TBS. (Id.)

Put differently, the panel determined there was no provision in the signed, written agreement that specifically stated the terms of an address commission. Since the COA was silent on this issue, the panel was free to reject Marachly's account of a purported agreement that was never reduced to writing. See Kirschten v. Research Insts. of Am., Inc., No. 94 Civ. 7947 (DC), 1997 WL 739587, at *7 (S.D.N.Y. Sept. 24, 1997) ("[A] court may not resort to extrinsic evidence to construe a contract unless the written agreement is ambiguous . . . ."); see also Schmidt v. Magnetic Head Corp., 97 A.D.2d 151, 157 (App. Div. 2d Dep't 1983) ("An omission

6

. . . in a contract does not constitute an ambiguity . . . ."). Alternatively, the panel was entitled to reject Marachly's claim that he and Gandhi agreed to a 1.25% address commission as lacking credibility. See Westerbeke, 304 F.3d at 214 ("The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law."). Either way, the panel clearly found there was a valid contract to which both parties assented, and the panel's decision not to credit Marachly's declaration regarding a purported term outside the agreement does not evidence manifest disregard for the law.

Lastly, the Court notes the arbitrators did not rely solely on Addendum No. 3 in their findings regarding an address commission. Rather, since Respondent provided no evidence of its position aside from the Marachly declaration, the panel fixed the address commission at the amount Petitioner *conceded* Respondent was owed. As the Final Award states, "[Respondent] had the opportunity to . . . require the address commission be inserted into the COA . . . [Respondent's] failure to do [so] leaves us . . . no choice but to reluctantly accept [Petitioner's] position that [Respondent] is due an address commission of 0.65% . . . only on the freight earned by TBS." (Pet. Ex. B at 12.) Accordingly, Respondent fails to demonstrate valid grounds exist to deny confirmation of the November 11, 2013 arbitration award.

## IV. Conclusion

The remaining arguments of the parties are without merit and therefore, are not addressed. For the reasons set forth above, the November 11, 2013 arbitration award in favor of Petitioner is hereby **CONFIRMED**. The Clerk of Court is respectfully directed to close this case from the Court's active docket and enter judgment consistent with this Order.

SO ORDERED.

Dated:  New York, New York
        July 21, 2014

_____
ANDREW L. CARTER, JR.
United States District Judge